**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MICHAEL LAIDLER,

        Plaintiff,

vs.                                         CIVIL NO.  04-1183 LFG/DJS

CITY OF ALBUQUERQUE, and
ALBUQUERQUE POLICE DEPARTMENT,

        Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT
AND DISMISSING PLAINTIFF'S COMPLAINT**

THIS MATTER is before the Court on Defendant City of Albuquerque's ("City" or "City Police Department") Motion for Summary Judgment, filed April 25, 2006.  [Doc. No. 66, 67].  The Court considered the motion, Plaintiff Michael Laidler's ("Laidler") response [Doc. No. 73] and the City's Reply [Doc. No. 74], and finds that oral argument is not necessary.  After a careful review of the pleadings, attachments and pertinent law, the Court determines that summary judgment should be granted in favor of the City and, accordingly, that Laidler's claims against the City will be dismissed, with the result that Laidler's lawsuit is dismissed, with prejudice.

**Background**

Laidler initially brought this lawsuit against Bernalillo County, the City of Albuquerque (including the Albuquerque Police Department and the City's operation of the Bernalillo County Detention Center), and Correctional Medical Services ("CMS"), seeking monetary damages for

1

alleged violations of his Fourth, Eighth and Fourteenth Amendment rights. He also asserts various torts purportedly arising under the New Mexico Tort Claims Act.

Laidler's claims against Bernalillo County were summarily dismissed [Doc. No. 17] and his claims against the City of Albuquerque, with respect to the City's operation of BCDC, were resolved [Doc. No. 46]. On March 10, 2006, the Court granted CMS's motion for summary judgment, thereby dismissing Laidler's claims against CMS. [Doc. No. 60.] The only remaining Defendant is the City's Albuquerque Police Department. Thus, this Motion and Order concern Laidler's remaining claims asserted against Defendant City Police Department.

For purposes of this motion, the material undisputed facts are as follow. On September 26, 2002, Laidler was arrested at his residence by Albuquerque city police officers on a parole violation charge - felon in possession of a firearm. During the course of a search of his residence, a firearm was found. Laidler was arrested and handcuffed on several occasions for varying amounts of time. He was handcuffed at his home either before or after the gun was located. He was handcuffed before being transported for an interview at the police sub-station. He was not handcuffed during the interview. Laidler was again handcuffed when transported to BCDC. Laidler's primary complaint against the police officers (or City) is that the handcuffs were too tight and police did not loosen them after he complained on multiple occasions. Laidler concedes that he never struggled with the police officers and never pulled or struggled while he was handcuffed.

However, according to Laidler, the handcuffing injured or broke his left wrist. There was no medical evidence substantiating that Laidler's left wrist was injured or fractured during the handcuffing incident or at any time during his detention or incarceration. Medical evidence was produced, however, to show that Laidler's left wrist was not fractured or injured during the

handcuffing incident. In the Court's prior Memorandum Opinion [Doc. No. 60, pp. 12-13], the Court specifically found no medical evidence to support Laidler's claim and unrebutted medical evidence that refuted the claim.

## Summary Judgment Standard

Summary judgment is appropriately granted when the moving party can demonstrate by an affirmative showing of evidence that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 26; <u>Adickes v. S.H. Kress & Co.</u>, U.S. 144, 90 S. Ct. 1598 (1970); <u>Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.</u>, 52 F.3d 1522, 1527 (10th Cir. 1995). Summary judgment is not a "disfavored procedural shortcut." Rather, it is an important procedure designed to "secure the just, speedy and inexpensive determination of every action." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986).

The party moving for summary judgment must shoulder the initial burden of establishing the absence of a question of material fact. <u>Adickes</u>, 398 U.S. at 154. That burden is carried when the moving party demonstrates by way of admissible evidence, that is, by deposition, answers to interrogatories, admissions, affidavits or other admissible documentary evidence that the undisputed facts entitle the moving party to judgment as a matter of law. <u>Celotex</u>, 477 U.S. at 327.

Once the party makes a *prima facie* showing of its entitlement to judgment, the burden shifts to the presence of a genuine issue for trial. <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not discharge its burden by simply relying on its pleadings or mere argument or contention. <u>Id.</u> Rather, the opposing party must set forth specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial.

3

Celotex Corp., at 324; Mitchell v. City of Moore, 218 F.3d 1190, 1197, 98 (10th Cir. 2000). Indeed, this requirement is made specifically clear in the rule itself:

> [A]n adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 26. *See also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Biester v. Midwest Health Servs., Inc. 77 F.3d 1264, 1266 (10th Cir. 1996) (discussing summary judgment standard and proof required).

Thus, the burden on the party opposing a motion for summary judgment is significant when the moving party has made a *prima facie* showing. The test is not whether the adverse party will be able to demonstrate a genuine issue at the time of trial, but, rather, whether the adverse party can demonstrate the presence of a genuine issue of material fact in response to the moving party's *prima facie* showing of entitlement to summary judgment at the time of motion practice. Notwithstanding the opposing party's burden, the factual record, along with any reasonable inferences that may be drawn therefrom, must be examined in the light most favorable to the party opposing summary judgment. Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir.), *cert. denied*, 537 U.S. 816 (2002).

## City's Motion for Summary Judgment

Laidler filed no excessive force claim against any individual police officer. He did not name any individual City police officers as Defendants in this lawsuit. He contends, however, that the City is liable for constitutional violations under a theory of *respondeat superior*. The City argues that Laidler's federal constitutional claims against it must fail as a matter of law, because it is well-settled

4

that a municipality cannot be held liable under a theory of *respondeat superior* for § 1983 claims. The City further argues that while a municipality can be held liable under § 1983 "for its own unconstitutional or illegal policies," Laidler neither alleged nor supplied evidence of any City custom or policy that caused the constitutional harm he claims to have suffered.    Laidler's first two causes of action in the Amended Complaint allege that:

(1) Defendant City Police Department is "responsible under a theory of *respondeat superior* for the acts and failures to act of the Albuquerque Police Department arresting officers . . ." with respect to alleged excessive force used by the City's police officers [Doc. No. 1, ¶¶ 28, 29, First Cause of Action, Amended Complaint], and

(2) Defendant Albuquerque City Police Department is "responsible under a theory of *respondeat superior* for the acts and failures to act of the arresting officers . . ." with respect to city police officers' alleged failure to provide Laidler with adequate medical care as a pretrial detainee [Doc. No. 1, ¶¶ 35, 36, Second Cause of Action, Amended Complaint].

Nothing in Laidler's amended complaint identifies any municipal custom or policy that served to violate his rights.

To the extent that Laidler's third cause of action might be considered an additional constitutional claim asserted against the City, Laidler alleges that the City again is responsible under a theory of *respondeat superior* for the acts and failures to act of the <u>"corrections officers and medical technicians of the Bernalillo County Detention Center"</u> related to allegations that Defendants failed to adequately train and supervise its employees in how to respond to medical care requests. [Doc. No. 1, ¶¶ 44, 47, 48] (emphasis added).  These allegations have no bearing on any claims concerning a municipal custom or policy or even a failure to train relating to handcuffing arrestees.

5

This third cause of action, while naming the City under a theory of *respondeat superior*, does not allege that the City failed to train or supervise or that the City is responsible for an alleged failure to train or supervise the <u>arresting officers</u>. As stated above, all claims against the City with respect to its operation of the Bernalillo County Detention Center have been resolved. Thus, it appears that with respect to federal constitutional claims asserted against the City Police Department, only the first and second causes of action are at issue.

Laidler also alleges state tort claims against the City Police Department. In his Amended Complaint, he contends that Defendants (including Albuquerque City Police Department) are "responsible under a theory of *respondeat superior* for the acts and failures to act of arresting officers" for alleged assault, battery and negligence. [Doc. No. 1, ¶¶ 58, 60, Fifth Cause of Action, Amended Complaint.] Laidler further alleges that he timely filed a tort claims notice with Defendants Bernalillo County, City of Albuquerque and the Bernalillo County Detention Center. [Doc. No. 1, ¶ 24.]

The City argues that all of Laidler's tort claims are barred by his failure to give notice under the New Mexico Tort Claims Act. Moreover, even if a genuine issue of fact exists as to whether Laidler satisfied the requirements of providing the City with notice of his claims under the Tort Claims Act, the City asserts that there is no genuine issue of material fact for a jury to decide with respect to the elements of a battery or assault claim. In addition, the City contends that immunity is not waived for the negligence claim, as asserted.

Laidler also asserts a claim against the City for punitive damages. The City argues that the claim must be dismissed in accordance with United States Supreme Court precedent holding that a

6

municipality is immune from punitive damages for claims brought under § 1983 and also under New Mexico state law that precludes an award of punitive damages against a governmental entity.

In response to the City's motion for summary judgment, Laidler characterizes his claims against the City as "excessive force, cruel and unusual punishment, assault, battery, negligence and failure to train and supervise among other claims." [Doc. No. 73, p. 2.] It is unclear what "other claims" Laidler might intend to assert against the City, but at this late date, it is not enough to imply there might be "other claims." Moreover, his opposition brief discusses only § 1983 claims against the City based on a theory of *respondeat superior*, alleged failure to train the arresting officers in the use of handcuffs, alleged cruel and unusual punishment, and tort claims of assault, battery, excessive force and negligence. [Doc. No. 73.]

## Discussion

### I.  *RESPONDEAT SUPERIOR* CLAIMS ASSERTED AGAINST THE CITY

Individual officers, who violate a person's federally protected rights while acting under color of law, may be liable under 42 U.S.C. § 1983. However, Laidler makes no claims and brings no causes of action against individual officers. His claims are only against a municipality, the City of Albuquerque.

It is well-settled law that a municipality may not be held liable under § 1983 under a theory of *respondeat superior*. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978).

> The Supreme Court has repeatedly and unequivocally stated that "a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."

Rowe v. City of Marlow, Okla., 116 F.3d 1489, 1997 WL 353001 at *3 (10th Cir. June 26, 1997) (*citing* Monell, 436 U.S. at 691); Bryan County v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 1388

(1997); Wilson v. Meeks, 98 F.3d 1247, 1255 (10th Cir. 1996)). To hold a municipality liable, the plaintiff must supply evidence of "actions [taken] pursuant to official municipal policy of some nature [that] caused a constitutional tort." Monell, 436 U.S. at 691. "The touchstone of a § 1983 action against a governmental body is an allegation that official policy is responsible for deprivation of rights protected by the Constitution." Cannon v. City and County of Denver, 998 F.2d 867, 877 (10th Cir. 1993).

"A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993) (internal citation omitted); *see also* Olsen v. Layton Hills Mall, 312 F.3d 1304, 1317-18 (10th Cir. 2002) (where a municipal officer commits no constitutional violation, the municipality cannot be held liable under § 1983). Similarly, even if Laidler could establish a constitutional violation by the arresting officers, he still would have to present evidence of a City policy or custom that caused the constitutional deprivation. Smith v. City of Okla. City, 696 F.2d 784, 786 (10th Cir. 1983).

Thus, for Laidler to establish municipal liability against the City and defeat the City's summary judgment motion, he must allege in his complaint and supply evidence showing that: "(1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation." Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998). Stated differently, if an employee of the City inflicts a constitutional injury when executing a City policy or custom, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, . . . the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. Municipal liability attaches to those

acts that the municipality officially sanctioned or ordered. Pembaur v. Cincinnati, 475 U.S. 480 (1986).

Proof of a municipality's failure to train might be enough to satisfy the showing of a municipal policy (if it caused a constitutional deprivation).

> A plaintiff "can use a municipality's failure to train as one way to make the required showing that a municipal policy or custom was the 'moving force' behind an already established constitutional deprivation." However, "the failure to train must amount to deliberate indifference to the rights of persons with whom the police come into contact."

Zuniga v. City of Midwest City, 68 Fed. Appx. 160, 162-63 (10th Cir. June 17, 2003) (*citing* Myers, 151 F.3d at 1316). In Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988), the Court held that a municipality could be held liable under § 1983 for excessive force used by policy "[w]here there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable."

Laidler fails to allege or supply evidence required under Myers v. Okla. county Bd. of County Comm'rs. Laidler's § 1983 claims against the City, premised on a theory of *respondeat superior*, cannot survive. The law is clear that the City may not be held liable on the basis of *respondeat superior* for the alleged tortious acts of its employees. Instead, the only way to hold the City liable, under the circumstances of this case, is for Laidler to demonstrate a constitutional violation by the arresting officer(s), and also a City policy or custom or practice that caused the constitutional deprivation. This Laidler has not done.

### A.     *Constitutional Violation*

First, Laidler presents no evidence that there was a constitutional violation, other than his varying and sometimes contradictory, self-serving affidavit and deposition testimony. For example, Laidler attests in an earlier affidavit that he "believed" his left wrist was broken when he was handcuffed by police officers on September 2002. [Doc. No. 54, Ex. 1, ¶ 2.] He never supplied objective evidence demonstrating that his wrist had been broken or injured during handcuffing or his incarceration; he never identified any medical expert or submitted any medical evidence corroborating his claim. Indeed, in its opinion granting summary judgment to CMS, the Court concluded that there was no medical evidence supporting Laidler's subjective belief that his wrist or hand was fractured on the date(s) in question.

> Laidler's subjective belief that his hand or wrist was broken in the police encounter is simply not supported by any medical evidence. Moreover, the unrebutted medical reports, including two x-rays, fail to show any wrist or hand fracture of recent origin. Both reports refer to a healed fracture that occurred when Laidler suffered a gunshot wound in 1994.

[Doc. No. 60, pp. 12-13.]

Laidler also alleges that the length of time he was handcuffed is evidence of a constitutional violation. Counsel argues in his opposing brief that Laidler was handcuffed "for over four hours while probation officers and police officers searched his home and was handcuffed to a pipe while police officers waited for federal investigators . . . ." [Doc. No. 73, p. 8.] Argument and contention of counsel are insufficient. Fed. R. Civ. P. 56. Although Counsel does not cite any record evidence for this allegation, the Amended Complaint alleges that Laidler was handcuffed for four hours. [Doc. No. 1.] Yet, Plaintiff's Statement of Facts, in his response brief, allege he was handcuffed while

10

probation officers searched his residence for a gun which took about 30-40 minutes. [Doc. No. 73, p. 4.] In support, Laidler refers to his affidavit attached to his response to CMS's motion for summary judgment and to his more current attached affidavit, yet neither affidavit asserts the length of time Laidler was supposedly handcuffed. [Doc. No. 54, Ex. 1; Doc. No. 73, Ex. 1.] Laidler's Statement of Facts also contend that he was handcuffed to a "handcuff pipe" at the sub-station and that he was detained at the sub-station for about four hours. [Doc. No. 73, pp. 4-5.] Again, while Laidler refers to his affidavit testimony in support of these "facts," his affidavits make no reference to length of time in handcuffs. He does, however, state in his affidavits that he was handcuffed "on multiple occasions." [Doc. No. 73, Ex. 1.]

In contrast to his statement of facts in his brief and the allegations in the Amended Complaint, Laidler testified at his deposition that police handcuffed Laidler at his house **after** the two-hour search of his home when the gun was located. [Doc. No. 74, Ex. A., at 88, 89.] Laidler testified that he was handcuffed to a steel pole at the substation for "about an hour I guess." [Doc. No. 74, Ex. A, at pp. 93-94.] After Laidler was taken out of the room with the steel pole, the officer took off the handcuffs during an interview that lasted 45 minutes to an hour. [Doc. No. 74, Ex. A, pp. 95.] Once the interview was completed, Laidler was again handcuffed and transported to BCDC, although there does not seem to be specific testimony as to how long he was handcuffed this time. [Doc. No. 74, Ex. A., pp. 95-96.] Thus, as best as the Court can determine, Laidler's deposition testimony is read to mean that Laidler was handcuffed on several occasions, none lasting more than one hour, and most likely for no more than a total of 90 minutes to two hours, depending on transportation times.

In any event, under these circumstances, there simply is no genuine issue of material fact for a jury to decide regarding the question of a constitutional violation by officers. Laidler presents only

11

his own testimony that his handcuffs were too tight and that police did not loosen the cuffs when he complained on a number of occasions. He supplies contradictory testimony regarding the length of time he was handcuffed, no objective evidence of an injury or fracture, and finally, undisputed evidence that he never struggled while in handcuffs and that police officers' only physical contact with him besides handcuffing him was to place a hand under his left armpit during transportation. This evidence simply does not demonstrate a genuine factual dispute for trial.

Handcuffing alone is not a constitutional violation. *See* Rodriguez v. Farrell, 280 F.3d 1341, 1352 (11th Cir. 2002) ("[p]ainful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal"), *reh'g denied*, 294 F.3d 1276 (11th Cir. 2002), *cert. denied,* 537 U.S. 906 (2003); Kain v. Nesbitt, 156 F.3d 669 (6th Cir. (1998) (claim for excessive force based on handcuffing alone would be dismissed as a matter of law), *abrogated on other grounds by* Johnson v. Hayden, 67 Fed. Appx. 319 (6th Cir. 2003); Castillo v. City and County of San Francisco, 2006 WL 1305214 at *3 (N.D. Ca. May 11, 2006) (plaintiff's Rule 50b motion would be denied because to grant the motion "would prevent police from using reasonable handcuffing force whenever an arrestee complained of an injury, no matter how credible the complaint or how latently dangerous the suspect might be"). Thus, Laidler's failure to show a constitutional violation is sufficient to defeat any and all claims of municipal liability against the City. However, even if Laidler could provide evidence of a constitutional violation sufficient to survive Rule 56, he neither supplies nor alleges any evidence of a City policy or custom that is responsible for the purported constitutional deprivation.

### B. *Policy, Custom or Practice*

In his complaint, Laidler never asserts a claim against the City based on a municipal "custom or policy" that is responsible for the claimed deprivation of a federally protected right. However, in

12

his response brief, Laidler recites legal precedent to the effect that to demonstrate municipal liability, there must be a "custom or policy," e.g., a continuing failure to train, supervise or discipline the City's police officers. Furthermore, he concedes that the activity which caused the deprivation must be a "usual and recurring practice," that there must be a "causal connection between the failure to train and the constitutional deprivation and that there must be a showing of deliberate indifference on the part of the City in failing to train its officers. Zuchel v. City and County of Denver, Colo., 997 F.2d 730, 734-35 (10th Cir. 1993) (internal citation omitted).

Laidler then summarily asserts that the City failed to provide sufficient evidence to show that the officers who effectuated the arrest were extensively trained regarding the use of handcuffs or the proper length of time to place an arrestee in handcuffs. Laidler contends in his response brief that the police officers were not adequately trained in these matters. No evidence to support this argument is submitted. Other than the unsupported and unsubstantiated contention in the brief, there is no evidence regarding a failure to train City police officers in handcuffing procedures.

Indeed, Laidler bears the burden of demonstrating the *prima facie* elements of his alleged failure to train claim. But, it is noteworthy that Laidler's Amended Complaint never alleges that the City failed to train its officers regarding handcuffing procedures. Instead, his Amended Complaint alleges a failure to train claim against the City with respect to its operation of BCDC and employees' allegedly inadequate response to requests for medical care, an issue that is no longer before the Court. [Doc. No. 1, ¶¶ 47, 48.] As stated before, the claims against the City's operation of BCDC were already resolved.

Perhaps the absence of a "custom or policy" or failure to train claim against the City with respect to handcuffing procedures explains the absolute lack of evidence provided by Laidler

13

regarding the City's related policies, customs and practices. The parties engaged in discovery in this case, yet Laidler supplies no deposition testimony or evidence of the City's customs, policies or procedures to support the failure to train claim.

Laidler's only attempt at providing some evidence of the City's practice or custom of failing to train its officers in how to properly handcuff arrestees was to cite four cases decided by the Tenth Circuit Court of Appeals in support of his assertion that "[t]he prevalence of wrist injuries because of handcuffing has resulted in lawsuits that prompted the City of Albuquerque to institute a policy requiring at least one finger width gap between the wrist and the handcuff." [Doc. No.73, p. 8.] First, there is no evidence properly before the Court on any municipal custom or policy, much less a policy requiring a finger width gap between the wrist and handcuff. Second, the case citations submitted by Laidler do not support his position, and in fact, nothing explains why Laidler cites these cases in support of the stated proposition.

For one thing, the underlying arrest of Laidler occurred in 2002. Laidler cites cases decided in 1990, 1994 and 1996. None of the cases discuss the City of Albuquerque's present policy, if any, regarding handcuffing or the "one finger width gap" requirement. One of the four cases cited is actually a case arising out of the District of Colorado rather than the District of New Mexico, Hannula v. City of Lakewood, 907 F.2d 129, 131-32 (10th Cir. 1990), *abrogation recognized in* 922 F.2d 1456 (10th Cir. 1991). The case of Bella v. Chamberlain, 24 F.3d 1251 (10th Cir. 1994), *cert. denied*, 513 U.S. 1109 (1995), does not allege any claims against the City of Albuquerque, nor could it discuss City policies and practices.

The case of Hardy v. Bernalillo County Detention Center, 97 F.3d 1464, 1996 WL 713848 (10th Cir. Sept. 25, 1996), also relied upon by Laidler, is more damaging than helpful to him.

14

Although the plaintiff in Hardy asserted claims against the City of Albuquerque, the Tenth Circuit affirmed summary judgment in favor of Defendants. In so doing, the Court reasoned:

> It is well established that a county or municipality may be held liable under § 1983 only when the constitutional deprivation at issue was undertaken pursuant to a "custom" or "policy" of that entity. . . .Plaintiff has produced no evidence to support a theory of county or municipality liability. She has identified no policies authorizing the manner in which she was restrained and has presented no evidence to establish any pervasive custom that resulted in her alleged injury.
> . . .
> Plaintiff's theory that defendants could be held liable for failure to adequately train the officers is also unsupported. The adequacy of police training can serve as a basis for liability under § 1983 only where such failure amounts to deliberate indifference to the rights of persons with whom subordinate officers come in contact. . . . There must be essentially a complete failure to train or training so reckless or grossly negligent that future misconduct is almost inevitable.

Id. at *2. The Tenth Circuit found no such evidence had been presented by the plaintiff in Hardy.

So, too, here. Laidler produced "no evidence to support a theory of county or municipal liability." He identified "no policies authorizing the manner in which [he] was restrained." He presented "no evidence to establish any pervasive custom that resulted in [his] alleged injury."

In addition, there is no evidence of a complete failure to train by the City or of reckless or grossly negligent training of City police. *Compare* Watson v. City of Kansas City, 857 F.2d 690, 696 (10th Cir. 1998) (showing by police arrest statistics and other evidence sufficient, as to alleged unconstitutional municipal policy or custom, to avoid summary judgment); Bordanaro v. McLeod, 871 F.2d 1151, 1155-58 (1st Cir.) (evidence of long-standing, widespread practice of police breaking down doors without a warrant when arresting a felon sufficient to support jury findings for plaintiffs or existence of unconstitutional custom), *cert. denied*, 493 U.S. 820 (1989).

15

Therefore, because Laidler failed to raise a genuine issue of material fact with respect to his municipal liability claims, the Court dismisses, with prejudice, all of the federal constitutional claims asserted against the City/Albuquerque Police Department.

## II.     STATE TORT CLAIMS

Before filing a tort claim against the City, Laidler was required to comply with the New Mexico Tort Claims notice provision. The provision of the Tort Claims Act pertaining to "notice of claims" states:

> A. Every person who claims damages from . . . any local public body under the Tort Claims Act . . . shall cause to be presented to the . . . mayor of the municipality for claims against the municipality . . . within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.
>
> B. No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against . . . any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence. . . .

NMSA 1978 § 41-4-16(A) and (B). New Mexico courts have interpreted the "actual notice" provision of subsection B to mean actual notice that there exists a likelihood that litigation may ensure. Frappier v. Mergler, 107 N.M. 61 (Ct. App. 1988). In addition, the statutory notice requirements have been likened to statutes of limitation. *See* Española Hous. Auth. v. Atencio, 90 N.M. 787, 789 (1977) ("[N]otice provisions operate as statutes of limitations since they are deemed to be conditions precedent to filing suit.")

The intent of the notice requirements are: "(1) to allow investigation of a matter while the facts are accessible, (2) to question witnesses, (3) to protect against simulated or aggravated claims,

16

and (4) to consider whether to pay the claim or refuse it." <u>Geronimo Griego v. City, et al.</u>, No. 03-1417 JH/DJS at *14 (D.N.M. Dec. 19, 2005) [Doc. No. 71.] The statutory claims notice provision contemplates that the governmental entity must be given notice of a likelihood that litigation may ensue, in order to reasonably alert it to the necessity of investigation the merits of a potential claim against it). <u>Id.</u>

Here, the City provides affidavit testimony by Anne S. Moureau, the Tort Claims Manager for the City of Albuquerque. Ms. Moureau testified that she creates a file upon receipt of a tort claim notice. She reviewed the City's files and determined the City had not received any notice of Laidler's possible tort claims against it until October 8, 2004 when Laidler served process on the City related to this lawsuit. Ms. Moureau further testified that the City did not receive any notice of claim as required by § 41-4-16 at any time before October 8, 2004. [Doc. No. 67, Ex. E.]

Laidler attempts to raise a genuine issue of material fact with respect to whether he filed the required tort claims notice by supplying his own affidavit testimony. He testified that he "filed three grievances on October 1, 8, and 14, 2002, regarding my left hand and wrist at BCDC" and "In October 2002, I sent tort claim notice letters, which included copies of the grievances, to the City of Albuquerque and Bernalillo County complaining of my injuries because I was advised by the law library attendant at the jail to do so." [Doc. No. 73, Ex. 1.]

In Laidler's response brief, counsel argues, without substantiation, that:

> Laidler was complaining to everyone that he met at the jail, that he was not receiving the medical attention he required. One of those people was the law library attendant that advised Mr. Laidler to file grievances and to send tort claims notices to the City of Albuquerque and the County of Bernalillo. Moreover, the City of Albuquerque had actual notice that Mr. Laidler was injured and was to pursue claims against Defendant because Mr. Laidler told the corrections officers,

17

> employees of the City . . ., of his injuries and filed three grievances on October 1, 8, and 14, 2002, sending a copy of each of the grievances with his letters to the City and to the County.

[Doc. No. 73, p. 9.]

Laidler has failed to raise a genuine issue of material fact for a jury to decide regarding whether he submitted the required and proper tort claims notice to the City. His affidavit states, without any specificity, that he sent "tort claim notice letters" to the City in October 2002 with copies of the three grievances. But, Laidler does not supply a copy of the tort claim notice letters. Further, he does not provide an exact date of his "letters," to whom they were addressed, how they were sent to the City (e.g., via U.S. mail), or what the letters specifically stated. Instead, Laidler relies on nothing more than hearsay testimony from an unidentified law library attendant at the jail who purportedly advised Laidler to send tort claim notice letters to the City and County. This is insufficient.

In addition, it is unexplained why Laidler was able to make copies of the three grievance that he allegedly sent to the City and County and yet not make copies of the "tort claim notice letters" also supposedly sent to the City with the grievances.

Moreover, even if Laidler believes that the grievances he allegedly sent to the City satisfy the tort claims notice requirement, they do not. The grievances themselves do not provide the required notice to the City that there was a likelihood of litigation. The grievances state briefly that police handcuffed Laidler on September 26, 2002 "very tight" "chip bone left hand" and go on to complain of medical concerns and medical care Laidler received at BCDC. There is no threat of litigation. There is nothing to alert the City that it needs to preserve evidence, investigate, or prepare to defend itself in court. Thus, even if provided to the City in October 2002, the unsubstantiated, brief

18

allegations that handcuffs were placed "very tight" on Laidler's hand and that he felt his hand was injured do not satisfy the specific notice provisions of the Tort Claims Act.

Laidler did not rebut the specific affidavit testimony of the City's tort claims manager that the City received no such notice and never opened a file on a potential claim by Laidler until receipt of his complaint in 2004. Therefore, Laidler failed to raise a genuine issue of material fact with respect to having provided proper notice of his potential tort claims to the City, and his tort claims against the City will be dismissed, with prejudice.

### III.    PUNITIVE DAMAGES

Even if any of Laidler's claims had survived summary judgment, any claim for punitive damages against the City, under either federal or state law, would fail. *See* City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981); Houston v. Reich, 932 F.2d 883, 890 (10th Cir. 1991); NMSA § 41-4-19(B).

### Conclusion

Laidler failed to raise a genuine issue of material fact with respect to either his federal or state law claims for the reasons discussed above. Therefore, his complaint against the remaining defendant City of Albuquerque (Albuquerque Police Department) must be dismissed, with prejudice.

IT IS THEREFORE ORDERED that Defendant City of Albuquerque's Motion for Summary Judgment [Doc. No. 67] is GRANTED, with the result that Plaintiff's Amended Complaint [Doc. No. 1] is dismissed, with prejudice.

                                                                                                 _____
                                                                                                 Lorenzo F. Garcia
                                                                                                 Chief United States Magistrate Judge